NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-903
*Consolidated With*
15-684

LINDA M. SNAVELY, ET AL.

VERSUS

ACE PAIN MANAGEMENT, LLC, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2011-0381
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**PHYLLIS M. KEATY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Jimmie C. Peters, and Phyllis M. Keaty, Judges.

**AFFIRMED; MOTION TO STRIKE GRANTED.**

**J. Lomax Jordan, Jr.**
**Attorney at Law**
**Post Office Box 4321**
**Lafayette, Louisiana 70502**
**(337) 233-9984**
**Counsel for PLAINTIFF/APPELLANT:**
    **Linda M. Snavely**

**Alan K. Breaud**
**Jade A. Forouzanfar**
**Breaud & Meyers**
**Post Office Box 3448**
**Lafayette, Louisiana 70502**
**(337) 266-2200**
**Counsel for DEFENDANTS/APPELLEES:**
    **Margaret Rice, M.D., APMLLC**
    **Rice Medical Management, LLC**
    **Ace Pain Management, LLC**

**KEATY, Judge.**

Plaintiff, Linda M. Snavely, appeals the trial court's judgment granting an Exception of Prescription in favor of Defendants, Margaret Rice, M.D., APMLLC; Rice Medical Management, LLC; and Ace Pain Management, LLC (collectively "Rice entities"). For the following reasons, the trial court's judgment is affirmed, and the Rice entities' Motion to Strike is granted.

## FACTS AND PROCEDURAL BACKGROUND

This medical malpractice, wrongful death, and survival action arose in 2010 when Brian Snavely, who was driving a motorcycle, almost collided with a vehicle driven by a minor, Kayse Vincent. Prior to this, Brian was treating with Dr. Margaret Rice (Dr. Rice) and the Rice entities for chronic pain following an industrial accident which occurred in 1999. He continued treating with them for pain associated with this 2010 motorcycle incident, which included taking narcotic pain medication prescribed by Dr. Rice and the Rice entities.

Brian subsequently filed a Petition for Damages on January 21, 2011, in the Fifteenth Judicial District, Docket Number 2011-0381 against Kayse's parents, Kip Dewayne Vincent and Sydney Ann Vincent, and their insurer, Allstate Insurance Company. Therein, Brian asserted that Kayse's parents were vicariously liable for Kayse's (collectively "the Vincents") negligence. During the pendency of this matter, Brian died of a drug overdose on August 18, 2012.

As a result, Brian's mother, Plaintiff herein, filed a First Amended and Restated Petition for Compensation and Damages Pursuant to Louisiana Civil Code Articles 2315.1 and 2315.2 on October 5, 2012 (first amended petition). Therein, Plaintiff amended Brian's personal injury action to include allegations that the motorcycle incident and subsequent medical treatment rendered, caused,

and/or contributed to his death. Kayse, who had turned eighteen years old at the time of Brian's death, was also added as a party defendant in the first amended petition. The Rice entities were not named as Defendants in this first amended petition.

On October 25, 2013, the Vincents and Allstate filed a Motion for Partial Summary Judgment, alleging that there lacked evidence showing that the 2010 motorcycle incident and subsequent medical treatment caused or contributed to Brian's death. On December 30, 2013, the trial court granted the Motion for Partial Summary Judgment, dismissing the wrongful death and survival claims against the Vincents and Allstate. On October 20, 2014, the trial court signed a Joint Motion for and Judgment of Dismissal filed by Plaintiff, the Vincents, and Allstate, dismissing all claims against them with prejudice. On that same date, the trial court granted Plaintiff's Motion for Leave of Court to file her Second Amended and Restated Petition for Compensation and Damages (second amended petition). In her second amended petition, Plaintiff named Stacey E. Singleton and the Rice entities as Defendants arising out of Brian's wrongful death.

On February 9, 2015, the Rice entities filed a Declinatory Exception of Lis Pendens and Peremptory Exception of Prescription. The trial court granted the exception following a hearing on March 2, 2015, and its judgment was reduced to writing on March 10, 2015. Plaintiff appealed this judgment.

On appeal, and in her sole assignment of error, Plaintiff contends that the trial court abused its discretion in granting the Rice entities' Exception of Prescription, ruling that the suit was prescribed on its face.

By order of this court dated October 15, 2015, this matter was subsequently consolidated with the companion case hereto, *Linda M. Snavely, et al. v. Ace Pain*

*Management, LLC*, et al., bearing Docket Number 15-684. In response, the Rice

entities filed a Motion to Strike the portion of the appeal arising from a judgment

rendered on March 23, 2015, dismissing another party, Stacey E. Singleton, from

the appeal. For the following reasons, the Rice entities' Motion to Strike is granted

and trial court's judgment granting its Exception of Prescription is affirmed.

## STANDARD OF REVIEW

This court discussed the applicable standard of review regarding an

Exception of Prescription as follows:

> Prescription is a peremptory exception which is provided for in
> La.Code Civ.P. art. 927. Evidence in support or contravention of the
> exception may be introduced if the grounds are not apparent from the
> petition. La.Code Civ.P. art. 931. An appellate court reviews the
> exception under the manifest error standard of review if evidence is
> introduced in support or contravention of the exception. *Dugas v.
> Bayou Teche Water Works*, 10-1211 (La.App. 3 Cir. 4/6/11), 61 So.3d
> 826. If not, the appellate court "simply determines whether the trial
> court's finding was legally correct." *Id*. at 830. Generally, the burden
> of proof lies on the party pleading the exception of prescription. *Id*.
> However, if it is apparent from the face of the pleadings that
> prescription has occurred, the burden shifts to the plaintiff to show
> that the action has not prescribed. *Id*.

*Allain v. Tripple B Holding, LLC*, 13-673, pp. 9-10 (La.App. 3 Cir. 12/11/13), 128

So.3d 1278, 1285. In this case, we will apply the manifest error standard of review

since evidence was introduced at the hearing on the exception.

## DISCUSSION

**I.     Motion to Strike**

In its Motion to Strike, the Rice entities note that two judgments were

attached to the Plaintiff's brief:  a March 2, 2015 judgment granting the Rice

entities' Exception of Prescription; and a March 23, 2015 judgment granting an

Exception of Prescription in favor of a different party in the same litigation, Stacey

E. Singleton. The Rice entities contend that consideration of this March 23, 2015

judgment is improper as Plaintiff never appealed it. In support, the Rice entities point to *Jeansonne v. New York Life Insurance Co.*, 08-932, p. 17 (La.App. 3 Cir. 5/20/09), 11 So.3d 1160, 1172, wherein this court held: "Without an order of appeal on the added judgments, we have no jurisdiction to hear the appeal as to those judgments."

We agree with the Rice entities in this regard because the record contains no order of appeal showing that Plaintiff appealed the March 23, 2015 judgment. Accordingly, the Rice entities' Motion to Strike is granted. Plaintiff is assessed with all costs associated with this Motion to Strike.

## II. Prescription

### A. Applicability of the Louisiana Medical Malpractice Act

In her only assignment of error, Plaintiff contends that the trial court abused its discretion in granting the Rice entities' Exception of Prescription. Plaintiff alleges that the Rice entities are not "qualified" for acts of medical malpractice under the Louisiana Medical Malpractice Act (LMMA), La.R.S. 40:1299.41-.49, and, therefore, her claims are not governed by same. We disagree based upon jurisprudential and statutory authority which states the contrary.

Specifically, in *Hardy v. Blood Systems, Inc.*, 01-134, p. 6 (La.App. 3 Cir. 5/2/01), 794 So.2d 13, 18, *writs denied*, 01-1395, 01-1928 (La. 1/11/02), 807 So.2d 234, we held that, "[a] non-qualified health care provider still commits 'medical malpractice' when it commits an unintentional tort or breach of contract of the type described in La.R.S. 40:1299.41(A)(8)." Similar to Plaintiff's argument in this case, the plaintiffs in *Hardy* argued that the defendants, Lafayette General Medical Center and Blood Systems, Inc., d/b/a United Blood Services, were not qualified health-care providers under the LMMA and, therefore, not subject to its provisions.

4

We disagreed with the plaintiffs' argument in *Hardy*, 794 So.2d at 18 (emphasis added), by stating:

> We believe that the legislature intended this clause to mean that a "health care provider," who is not qualified, i.e., does not pay into the system, cannot avail itself of the liability caps and review procedure by the medical review panel. . . . **Simply because a party is not "qualified" does not change the inherent nature of the type of action as one for medical malpractice**. La.R.S. 40:1299.41(D).

*Hardy* is also factually similar to the instant matter since in *Hardy*, the issue was prescription regarding medical malpractice actions involving non-qualified health care providers. We concluded that:

> [Louisiana Revised Statutes] 9:5628 applies to non-qualified health care providers and qualified health care providers alike as the statute nowhere precludes its application. Thus, it follows, that a plaintiff has a medical malpractice action independent of whether or not the defendant is a "qualified" health care provider per La.R.S. 1299.41(A)(8).

*Id*. at 18. We further pointed out that:

> [Louisiana Revised Statutes] 40:1299.41(D), though poorly worded, was enacted specifically to state that, although a non-qualified health care provider cannot avail itself of the primary benefits of paying into the PCF (i.e., cap on damages and initial submission of claims to the medical review panel), it can still take advantage of the prescriptive period set forth in La.R.S. 9:5628.

*Id*.

Based on the above jurisprudence and statutes, the Rice entities' status as a non-qualified health-care provider does not change the nature of this action as a medical malpractice action. It is, therefore, subject to the provisions provided for by the LMMA. Accordingly, Plaintiff's argument is without merit in this regard.

**B.     Medical Malpractice Prescription and Discovery Exception**

The prescriptive period governing medical malpractice claims is codified at La.R.S. 9:5628(A) (emphasis added), which provides in pertinent part:

No action for damages for injury or death against any physician . . . hospital or nursing home duly licensed under the laws of this state . . . whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought **unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect;** however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

Application of the one-year prescriptive period with respect to damages that are immediately apparent was discussed by the Louisiana Supreme Court in *In re Medical Review Panel for Claim of Moses*, 00-2643, pp. 7-8 (La. 5/25/01), 788 So.2d 1173, 1178 (emphasis added), as follows:

[A] one-year prescription period (which parallels the general tort period) is the general rule, which applies to all types of medical malpractice actions. **Under this general rule, such actions prescribe one year from the date of the alleged act, omission or neglect. This rule applies when the damages are immediately apparent.**

In this case, any damages resulting from the alleged malpractice occurred prior to Brian's death and, therefore, became immediately apparent on August 18, 2012, when he died. Plaintiff's second amended petition naming the Rice entities as Defendants was filed on October 20, 2014, which was more than two years following Brian's death. Therefore, it prescribed on its face since more than one year lapsed from the time that Brian died until the time that Plaintiff filed the second amended petition. As such, the burden shifted from the Rice entities to Plaintiff to show that the action had not prescribed.

Plaintiff attempted to meet her burden of proof by arguing application of the discovery exception provided for in La.R.S. 9:5628(A) when damages are not immediately apparent. The *Moses*, 788 So.2d at 1178-79 (footnote omitted), court explained the applicability of this discovery exception as follows:

6

[I]n cases involving damages that are not immediately apparent, a discovery exception to the general rule is codified. The discovery exception embodied in [La.R.S. 9:]5628[(A)] is a codification of the fourth category of *contra non valentem* for cases in which the cause of action is not immediately knowable. Under this discovery rule, such actions prescribe one year from the date of discovery of the alleged act, omission or neglect.

The *Moses*, 788 So.2d at 1179, court further explained that:

[A]n overall limitation is placed on cases otherwise falling within the discovery rule. That overall limitation is the underscored portion of [La.R.S. 9:]5628[(A)], which provides that "*in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.*" La.Rev.Stat. 9:5628[(A)] (emphasis supplied). Translated, this means that "the *contra non valentem* type of exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the alleged injury causing act, omission or neglect." *Boutte v. Jefferson Parish Hospital Service District No. 1*, 99-2402 at p. 5 (La. 4/11/00), 759 So.2d 45, 49.

The *Moses* court explained that La.R.S. 9:5628(A) "is a hybrid statute, providing both a one-year prescriptive period, including an incorporation of the discovery rule, and a three-year repose period; the latter repose rule acts to cut off the discovery rule incorporated into the former prescriptive period." *Id.* It noted that this three-year period sets an "'overall limitation, one based on the length of the period following the negligent act, beyond which the action is barred, regardless of subsequent discovery.'" *Id.* (quoting 1 David W. Louissell & Harold Williams, *Medical Malpractice* ¶ 13.02[2][b] at 13-40 (1999)). Additionally, a claim is not facially prescribed when the action, "although brought after one year from the date on which malpractice was committed has passed, is brought within one year of the date of discovery of malpractice and within three years of the date of malpractice." *Patin v. State*, 11-290, p. 4 (La.App. 3 Cir. 10/5/11), 74 So.3d 1234, 1238, *writ denied*, 11-2844 (La. 3/2/12), 84 So.3d 533.

7

In this case, Plaintiff's second amended petition states that she did not discover a medical malpractice claim until September 2013 when she was informed by her counsel of a verbal opinion rendered by a pharmacologist/toxicologist expert regarding Brian's death. Her second amended petition explains that her counsel hired an expert in August 2013 to examine Brian's medical records who opined that there may have been a breach in the standard of care rendered by the Rice entities. Plaintiff argues in her brief, therefore, that her second amended petition was timely since it was filed within one year of her September 2013 discovery of a possible medical malpractice claim against the Rice entities.

Plaintiff's reliance on the September 2013 conversation with her attorney regarding the pharmacologist/toxicologist's opinion as a basis for suspension of prescription is misplaced pursuant to *Bosarge v. DePaul/Tulane Behavioral Health Center*, 09-1345, p. 5 (La.App. 4 Cir. 5/19/10), 39 So.3d 790, 794, wherein the fourth circuit held that "[t]he plaintiff need not be informed by an attorney or physician of the possibility of malpractice before prescription begins to run." The appellate court further explained:

> Prescription commences and continues when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is a victim of a tort. The test for determining a plaintiff's knowledge turns on her reasonableness, whether a cause of action was reasonably "knowable" by a plaintiff.

*Id.* (citations omitted).

The evidence in this matter includes Brian's death certificate showing that it was issued on August 23, 2012, and that he died on August 18, 2012, of "poly drug toxicity" caused by the "misuse of drugs." This shows that even if Plaintiff was unaware that Brian's death was caused by medical malpractice on August 18, 2012,

8

his medical malpractice cause of action was reasonably "knowable" and sufficient to incite curiosity by August 23, 2012. Thus, Plaintiff's filing of her second amended petition was untimely since it was filed approximately two years later.

Based on the foregoing, we find that the trial court did not manifestly err in finding that Plaintiff's medical malpractice suit had prescribed in this regard.

### C. Wrongful Death Prescription

The prescriptive period for a wrongful death claim asserted in a medical malpractice action was discussed by the Louisiana Supreme Court in *Taylor v. Giddens*, 618 So.2d 834, 836 (La.1993), as follows:

> [Louisiana Revised Statutes] 9:5628 provides the prescriptive period for survival actions but does not provide the prescriptive period for wrongful death actions . . . . The commencement and running of the prescriptive period for the wrongful death action is controlled by the one year liberative period applicable to delictual actions, [La.Civ.Code] art. 3492, and the action is available to the certain beneficiaries named in [La.Civ.Code] art. 2315.2[.]

Delictual actions have a prescriptive period of one year which "**commences to run from the day injury or damage is sustained**." La.Civ.Code art. 3492 (emphasis added). The *Taylor*, 618 So.2d 834, court further explained that a wrongful death action is not the same as a malpractice action since the former only favors the victim's beneficiaries. As such, it is not controlled by the prescriptive period provided for in medical malpractice actions, La.R.S. 9:5268(A). *Id*. The wrongful death prescriptive period begins to run on the date of the victim's death because that is the date that the claimants are injured. *Id*.

In this case, the wrongful death prescriptive period began to run on August 18, 2012, which was the date of Brian's death. Plaintiff waited until 2014 to file suit against the Rice entities. Her action, therefore, prescribed since it was

9

not filed within one year of Brian's death. Accordingly, we find that the trial court did not manifestly err in finding that Plaintiff's wrongful death suit had prescribed.

**D.     Relation Back**

Plaintiff argues that prescription failed to occur pursuant to the relation back theory. An amendment relates back to the date of the filing of the original pleading "[w]hen the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading[.]" La.Code Civ.P. art. 1153. Plaintiff alleges that the medical malpractice claims asserted in her second amended petition against the Rice entities are timely since they relate back to the claims asserted in her first amended petition filed on October 5, 2012, against former Defendants, the Vincents and Allstate. Plaintiff, therefore, contends that her second amended petition is timely. We disagree for the following two reasons.

First, La.Code Civ.P. art. 1153 is not applicable since there cannot be any relation back in medical malpractice matters. *Warren v. Louisiana Med. Mut. Ins. Co.*, 07-492 (La. 12/2/08), 21 So.3d 186. In *Warren*, the supreme court found that La.Code Civ.P. art. 1153 did not apply to a medical malpractice action in the absence of specific legislative authorization in the LMMA. The *Warren* court found that the amended petition which added the medical patient's adult daughter as a plaintiff in a wrongful-death medical malpractice action after the expiration of the prescriptive period did not relate back to the timely filing of the original wrongful-death petition by the patient's wife and other adult daughter. The *Warren*, 21 So.3d at 207 (internal citations omitted), court further held:

> Although La. C.C.P. art. 1153 does not "interrupt" prescription as did the general codal articles in *LeBreton* [*v. Rabito,* 97-2221 (La. 7/8/98), 714 So.2d 1226] and *Borel* [*v. Young,* 07-419 (La. 11/27/07), 989

So.2d 42], "relation back" of an untimely filed amended petition directly avoids the application of prescription by allowing a claim that would have otherwise prescribed to proceed. The effect of this interference is that if relation back is allowed, the "prescription and suspension provisions provided in the Medical Malpractice Act will be written out," which, as we recognized in *LeBreton*, presents "a conflict." Further, the application of La. C.C.P. art. 1153 "would potentially subject a health care provider to an indefinite period of prescription, . . . a result clearly at odds with the purpose of the [Act]."

Second, even if Plaintiff could use the relation back theory to prevent her claims from being prescribed, the second amended petition contains nothing to which can be related back. This was explained by the supreme court in *Naghi v. Brener*, 08-2527, p. 10 (La. 6/26/09), 17 So.3d 919, 925, wherein it held that "the relation back theory assumes that there is a legally viable claim to which the pleading can relate back." As discussed above, the trial court dismissed the wrongful death and survival claims against the Vincents and Allstate a little less than one year prior to Plaintiff's filing of her second amended petition. Given the dismissal, there is no viable claim to which her second amended petition could relate back.

In the instant matter, the trial court agreed that the relation back theory with regards to Plaintiff's medical malpractice claims was inapplicable by stating:

I'm persuaded that the exception of prescription is valid and I'm going to grant that exception. I'm doing it on the basis of two things. One is, is [sic] the fact that the dismissal was some ten months prior to bringing in these entities. And the second is, is the [sic] both the statute and the jurisprudence with regards to relating back in medical malpractice cases.

Accordingly, Plaintiff's argument is without merit in this regard, and the trial court's judgment granting the Rice entities' Exception of Prescription was not manifestly erroneous.

11

**DECREE**

The trial court's judgment granting an Exception of Prescription in favor of Defendants, Margaret Rice, M.D., APMLLC; Rice Medical Management, LLC; and Ace Pain Management, LLC, is affirmed. We further grant Defendants' Motion to Strike. All costs associated with this appeal and the Motion to Strike are assessed to Plaintiff, Linda M. Snavely.

**AFFIRMED; MOTION TO STRIKE GRANTED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.